THOMAS McCOMBS, Appellant, v. W. C. FOSTER, Respondent.

Kansas City Court of Appeals, January 20, 1896.

1. **Appellate and Trial Practice**: RULINGS TO MEET ANTICIPATED EVIDENCE: DISCRETION OF THE COURT. The refusal of the trial court to make a ruling in the anticipation of the offer of certain evidence by a defendant, is within its discretion, and the appellate court can not interfere.

2. ———: REPEATED OFFERS OF EVIDENCE. When an offer of evidence has been made and a ruling secured thereon, by its rejection all is accomplished which will serve a useful and proper purpose; but repeated offers to prove the same matter by subsequent witnesses, though it may apparently be prejudicial, are matters for the trial court which the appellate court can not with safety supervise.

3. **Trial Practice**: REMARKS OF THE JUDGE AS TO VERDICT. The remarks of the judge to the jury as to their reaching a verdict in this case are reviewed by the court and *held* to require a reversal of the judgment.

*Appeal from the Bates Circuit Court.*—HON. JAMES H. LAY, Judge.

REVERSED AND REMANDED.

*S. W. Dooley* and *Graves & Clark* for appellant.

(1) Ben Funk was neither a party to the suit nor a witness in the case, and the court erred in overruling or refusing to rule upon plaintiff's written request to exclude certain testimony as to his reputation for being a forger of paper, without having the questions paraded before the jury. *Turner v. M. M. & F. Co.*, 56 N. W. Rep. 360; *Jones v. Village of Portland*, 50 N. W. Rep. 734. (2) After the plaintiff offered to admit in the record, that witness E. N. Dickinson would testify to the bad reputation of Ben Funk, as was done on page 52 of abstract, and after asking the court to pass upon the competency of such evidence without having it paraded before the jury, it was rankest error for the court to permit counsel to give the jury the full benefit of his proffered testimony by asking the question to witness Dickinson, and follow it up by the statement that he could prove it by a dozen or more; and this, too, upon the inquiry of the court. *Turner v. M. M. & F. Co.*, 56 N. W. Rep. 360; *Jones v. Village of Portland*, 50 N. W. Rep. 734. (3) The error became greater and more prejudicial when counsel again paraded the same things before the jury while examining witness Dr. S. F. Standish, after the offer of plaintiff and the two previous rulings of the court. This proceeding of counsel was equivalent to saying to the jury, "Ben Funk, the principal in this note, is and was a forger, but we are prohibited from showing it." If counsel persists in this course, the only proper thing to do is to reverse their case. Such has been the

ruling of the courts. *Turner v. M. M. & F. Co., supra;
Jones v. Village of Portland, supra.* (4) The court erred
in making the oral statements to the jury, found in par-
agraph 8 of the motion for new trial. This language
had a tendency, under the peculiar circumstances in
this case, to coerce a verdict. *McPeak v. Railway*, 30
S. W. Rep. 170; s. c., 128 Mo. 617; *State v. Hill*, 91
Mo. 423; *Insurance Co. v. White*, 24 S. W. Rep. (Ark.)
424–427.

*Francisco Brothers* for respondent.

(1) The impeaching evidence complained of may
have been incompetent. The court so ruled and
excluded it. What more could have been done? Ap-
pellee's counsel had a right to offer evidence and have
the benefit of a ruling of the court on it, and the mere
fact that appellant thought it incompetent was no rea-
son to deprive him of that right. The record shows
that appellant had taken the deposition of Ben Funk
in this case and then had it on file, although it had not
yet been introduced in evidence. Plaintiff's request
for the court to pass upon the written admission was
nothing more than a request to the court to meet a
question for him not yet in the case. (2) The remarks
made by the court to the jury and complained of as
calculating to coerce a verdict, were not improper or
even out of place, and did not in any way tend to
coerce the jury. In the *Hill* case, which is a criminal
case and the rule is much stricter, the judge in effect
told the jury that if they agreed by 11 o'clock of
that day he would discharge them, but that if they did
not agree by that time he would hold them from day
to day till they did agree. So is the language used by
the trial judge in the *McPeak* case (30 S. W. Rep. 173)
cited by appellant very different from the remark in this

case. The most that can be said against the remarks made by the judge in the case at bar, is that they tended simply to urge the jury to find a verdict, and this is proper and never held to be error. 2 Thompson on Trials, sec. 2302.

ELLISON, J.—This cause is here on second appeal (62 Mo. App. 303). It is an action on a promissory note alleged to have been executed by the defendant and Ben Funk and M. J. Funk. Defendant was the only one of the parties served and the case was dismissed as to the Funks. Neither of them was a witness in the cause. Defendant pleaded *non est factum*, duly sworn to. The judgment in the trial court was for defendant.

At the opening of the case for the defense, the plaintiff seems to have apprehended that the defense would undertake to introduce evidence to show that Ben Funk's reputation for truth and veracity was bad and that he was reputed to be a forger. Plaintiff, therefore, submitted to the court an objection in writing to such apprehended testimony, on the ground that such testimony did not tend to prove or disprove any issue in the case and that it was prejudicial to the plaintiff and could only be offered in the presence of the jury for the purpose of injuring plaintiff's case with the jury. The court declined to rule on the matter at that time. We can not interfere with the court's discretion in this refusal. The court was certainly authorized to refuse to rule upon a point of objection in advance of the offer of the testimony. At the time of the court's refusal, it did not even appear, aside from the aforesaid written suggestion of the plaintiff, that such testimony would, in fact, be offered. Afterward, however, the defendant did introduce a witness and offer to show by him that Funk had the reputation

of being a forger and the court excluded it. The defendant's counsel then stated, in the presence of the jury, that "a dozen or more would swear to the same thing." After the court ruled that such evidence could not be heard (Funk being neither a party nor a witness), the defendant asked the same question of a number of other witnesses, the court excluding the testimony, and, in addition, inquired as to Funk's reputation for truth and veracity. The probable effect of all this was to prejudice plaintiff's case with matters which were foreign to the case, and which, of course, should not have been brought before the jury, if it could have been avoided. The defendant's counsel had a right to make his offer of proof, if made in good faith, as it doubtless was, and take the court's ruling thereon. But when the offer was made and rejected by the court, all was accomplished which could serve any useful and proper purpose to the defendant. The repeated offer with other witnesses had a tendency to create an impression with the jury that since defendant denied he ever signed the note, and Funk was a bad character and a forger, he forged defendant's name. But we recognize that there are matters arising in the course of a trial which can not, with safety, be supervised or controlled there. The trial court is in a much better situation to judge rightly in matters of the nature here complained of than we are. At the same time we readily concede to plaintiff's counsel that under all the circumstances of the case, the connection of the parties, the nature of the defense, and the manner of the offer of the testimony, the repeated offer may have had its tendency to debar plaintiff from that impartial and unbiased consideration at the hands of the jury which the law vouchsafes to him.

The next complaint made by plaintiff relates to matters transpiring after the cause was submitted to the jury. The record shows the following:

"After the jury had received their instructions, about 7 o'clock in the evening, the jury having been called in for the purpose of adjourning for supper, one of the panel announced to the court that they never could agree. The court said to the jury: 'You are not brought in to announce the situation or standing of the jury; the case is an expensive one to try and you should try to agree; I will let you separate and go to supper under the usual charge, and when you come back, you can see if you can't agree; I will have to go away on the evening train (meaning a train leaving Butler at 9:45 P. M.) on account of having received a telegram announcing a family affliction. If you can not agree, I will leave someone to receive your verdict and you can stay until morning, if you do not agree before.'

"Plaintiff excepted to the above remarks of the court, as they tended to coerce and influence the jury in agreeing upon a verdict.

"After supper the court and jury came back, and between 8:10 and 9:10 of said evening the court had the sheriff to inquire of the jury some three times as to whether they had agreed; and the last time, which was about 9:10 o'clock (the court expecting the 'bus to leave the hotel at 9:15 for the train which he intended leaving on) sent the sheriff to the jury and said: 'Tell the jury it is time for me to go and for them to report the prospect of a verdict.' That the sheriff did go to the jury as directed by the court, and within a few minutes they returned a verdict for the defendant. To all of which plaintiff excepted as the same was prejudicial to the plaintiff and tended to coerce and influence a verdict."

McCombs v. Foster.

It appears that this was Saturday night and that the trial judge, who resided in another county, had received a telegram concerning an affliction in his family, which very naturally caused him to wish to go to them at the first opportunity. Under such circumstances, he addressed the jury as is herein shown. In *McPeak v. Railroad*, 128 Mo. 617, a question much like this was before the supreme court. From that decision and the authorities, especially from this state, which are discussed, we are forced to the conclusion that error was committed, for which the judgment must be reversed. Among other cases referred to is that of *State v. Hill*, 91 Mo. 423. In that case the following took place between the judge and jury, in open court, after the jury had the case under consideration for several hours and had not agreed, viz.: "Gentlemen, I will be here until 11 o'clock to-day, at which time I expect to go home, and if you agree upon a verdict against that time, you will be discharged; if you can not agree by that time, court will adjourn from day to day, until such time as you may agree." The jury in that case returned a verdict before 11 o'clock, as they did in this case before 9:15. It is suggested that the *Hill* case was a criminal case, where greater care and strictness is enforced than in civil cases. It will be observed, however, that the rule was applied by a majority of the court, in the civil case of *McPeak*, *supra*.

We are satisfied that it was the circumstances of distress in which the learned judge found himself placed that induced the communication to the jury; but, at the same time, we feel that our duty is to reverse the judgment and remand the cause. All concur.